UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS SULLIVAN,<br><br>    Plaintiff,<br><br>    v.<br><br>PFIZER, INC.,<br><br>    Defendants. | No. 3:14-cv-1374 (MPS) |

## MEMORANDUM OF DECISION

Plaintiff Thomas Sullivan, *pro se*, brings this action against Defendant Pfizer, Inc. ("Pfizer"), alleging he suffered injuries as a result of his use of the prescription drug Lipitor, and that Pfizer "failed to provide adequate warnings regarding the use of Lipitor." (ECF No. 1 at 9-10.) Although the Complaint does not specify a statutory violation, the Court interprets the Complaint as alleging violations of the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52–572m, *et seq.* Defendant has moved for summary judgment (ECF No. 23.) For the reasons that follow, the Court GRANTS Defendant's motion.

## I.    BACKGROUND

### A.  Relevant Factual Background[1]

Sullivan suffered from a heart attack in December 2006. (Defendant's Local Rule 56(a)1 Statement, ECF No. 25 ("Def.'s L.R. 56(a)1 Stmt.") ¶ 1; Plaintiff's Local Rule 56(a)2 Statement, ECF No. 28-2 ("Pl.'s L.R. 56(a)2 Stmt.") ¶ 1.) After the heart attack, doctors prescribed—and Sullivan began taking—Lipitor, in order to "prevent another heart attack." (Def.'s L.R. 56(a)1

---

[1] Unless otherwise noted, the following facts are undisputed, and recounted in the light most favorable to the nonmovant, drawing all reasonable inferences in favor of the nonmovant. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

Stmt. ¶ 1; Pl.'s L.R. 56(a)2 Stmt. ¶ 1.) Lipitor is a type of prescription drug called a "statin." (Pl.'s Reply, ECF No. 33 at 2). Sullivan ceased taking Lipitor in January 2012. (Def.'s L.R. 56(a)1 Stmt. ¶ 1; Pl.'s L.R. 56(a)2 Stmt. ¶ 1.)

Sullivan alleges that during and after the approximately five year period he was taking Lipitor, he suffered from the following injuries and symptoms:

- severe peripheral neuropathy;
- muscle wasting (60 lbs.) and myopathy;
- cataracts;
- chronic cough (probable interstitial lung disease);
- high CPK levels indicating muscle damage;
- elevated IgG para protein;
- low testosterone;
- elevated liver enzymes;
- severe sinus congestion;
- thyroid issue with continual cold body sensations;
- lack of sensation in hands, legs and feet;
- loss of balance and coordination;
- wheelchair depend[ency];
- lack of grip strength;
- swollen feet;
- reduced ability to heal from cuts/bruises;
- cellular health at 3.3 instead of normal 6.0-8.0 range;
- lack of energy and lack of strength;
- groin pain;
- constipation;
- ear pain;
- trans global amnesia;
- muscle and joint pain;
- erectile dysfunction;
- reduced ability to sleep;
- rectum pain;
- heel pain; and
- poor appetite.

(Compl., ECF No. 1 at 9-10.)

"No medical doctor has ever told Plaintiff that Lipitor caused any of his alleged injuries." (Def.'s L.R. 56(a)1 Stmt. ¶ 4; Pl.'s L.R. 56(a)2 Stmt. ¶ 4.) In fact, Sullivan's treating physicians

"have told him that they do *not* believe that Lipitor caused his ailments." (Def.'s L.R. 56(a)1 Stmt. ¶ 4; Pl.'s L.R. 56(a)2 Stmt. ¶ 4.) Moreover, Sullivan conceded that "no doctor has ever told him that he has interstitial lung disease," "that medical tests revealed that he does *not* have interstitial lung disease," "and that doctors concluded his cough is caused by acid reflux." (Def.'s L.R. 56(a)1 Stmt. ¶ 5; Pl.'s L.R. 56(a)2 Stmt. ¶ 5.) Sullivan also "conceded that he had complained to his doctor of heel pain in January 2006, a full year before he started taking Lipitor." (Def.'s L.R. 56(a)1 Stmt. ¶ 6; Pl.'s L.R. 56(a)2 Stmt. ¶ 6.) Sullivan's former cardiologist, Dr. Dennis L. Dobkin, testified that he does not believe that Lipitor caused Sullivan's alleged injuries. (Def.'s L.R. 56(a)1 Stmt. ¶ 7; Pl.'s L.R. 56(a)2 Stmt. ¶ 7.) Finally, neuromuscular specialist Dr. Kevin J. Felice treated Sullivan for approximately one and a half years and he also testified that he did not believe that Lipitor caused Sullivan's alleged injuries. [2] (Def.'s L.R. 56(a)1 Stmt. ¶ 8; Pl.'s L.R. 56(a)2 Stmt. ¶ 8.)

### B. Procedural Background

Sullivan, a citizen of Connecticut, filed his original complaint in September 2014 in the Superior Court of the State of Connecticut, Judicial District of Litchfield. (ECF No. 1 at 8-10.) On September 19, 2014, Pfizer, a citizen of Delaware and New York, removed the action to federal court based on diversity jurisdiction. (*Id*. at 1-2 ¶¶ 3-5.)

---

[2] Sullivan "denies" that the doctors' conclusions are correct (Pl.'s L.R. 56(a)2 Stmt. ¶¶ 4-8), and avers that "doctors have been duped by the drug companies' propaganda." (*Id*. ¶ 4.) While Pfizer cites to specific quotations in the deposition testimony of Sullivan and his doctors, Sullivan's "denials" are not followed by any "specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial" or to "(2) evidence that would be admissible at trial," as required by Rule 56(a)(3) of the Local Rules of Civil Procedure for the District of Connecticut. CT R USDCT L.Civ.R. 56(a)(3). In fact, Sullivan's only citation in his L.R.56(a)2 Statement is to his Exhibit 1, which is a website describing negative characteristics of statins, adapted from a 2003 essay by Owen R. Fonorow entitled, *CoQ10 and Statins: the Vitamin C Connection*. Fonorow has not been disclosed as an expert witness in this case. Sullivan was specifically advised of the requirements of Local Rule 56 in a *Notice to Pro Se Litigant Opposing Motion for Summary Judgment* filed by the Defendant as required by Local Rule 56(b). (ECF No. 26.)

The Court's November 4, 2014, Scheduling Order (ECF No. 14) adopted the parties' proposed deadline of May 11, 2015 (*see* ECF No. 13 at 5-6), by which Sullivan would disclose his expert witnesses. On March 17, 2015, Sullivan disclosed Dr. Stephanie Seneff as an expert witness. (Def.'s L.R. 56(a)1 Stmt. ¶ 10; Pl.'s L.R. 56(a)2 Stmt. ¶ 10.) Dr. Seneff "has a B.S. in biophysics, an M.S. and E.E. in electrical engineering, and a Ph.D. in electrical engineering and computer science." (Def.'s L.R. 56(a)1 Stmt. ¶ 13; Pl.'s L.R. 56(a)2 Stmt. ¶ 13.) She "is not a medical doctor, never attended medical school, and does not practice medicine." (Def.'s L.R. 56(a)1 Stmt. ¶ 13; Pl.'s L.R. 56(a)2 Stmt. ¶ 13.) She is employed by the Massachusetts Institute of Technology as a Senior Research Scientist in the Computer Science and Artificial Intelligence Lab. (Def.'s L.R. 56(a)1 Stmt. ¶ 13; Pl.'s L.R. 56(a)2 Stmt. ¶ 13.) Her career focus is on "developing a computational model for the human auditory system, understanding human language so as to develop algorithms and systems for human computer interactions, as well as applying natural language processing (NLP) techniques to gene predictions."[3] (Def.'s L.R. 56(a)1 Stmt. ¶ 13 (*citing* Def.'s Ex. E); Pl.'s L.R. 56(a)2 Stmt. ¶ 13.)

At the time Sullivan disclosed Dr. Seneff as an expert witness, he also produced a copy of a "Witness Report" from Dr. Seneff. (Def.'s L.R. 56(a)1 Stmt. ¶ 10; Pl.'s L.R. 56(a)2 Stmt. ¶ 10.) "The Witness Report contains an approximately two-page discussion of alleged theoretical effects of statin medications on the human body . . . [and] never mentions Plaintiff or Lipitor." (Def.'s L.R. 56(a)1 Stmt. ¶ 10; Pl.'s L.R. 56(a)2 Stmt. ¶ 10.) Four days before his expert disclosure deadline, Sullivan told Pfizer's counsel, by letter dated May 7, 2015, that he had one expert witness report by Dr. Seneff entitled *Statins and Myoglobin: How Muscle Pain and Weakness progress to Heart, Lung and Kidney Failure*. (Def.'s L.R. 56(a)1 Stmt. ¶ 11; Pl.'s L.R.

---

[3] Sullivan adds that Dr. Seneff "has researched and written numerous peer reviewed articles on the dangers of statins" like Lipitor. (Pl.'s L.R. 56(a)1 Stmt. ¶ 13.)

56(a)2 Stmt. ¶ 11.) This report differed from the "Witness Report" that Plaintiff had produced on March 17, 2015. (Def.'s L.R. 56(a)1 Stmt. ¶ 11; Pl.'s L.R. 56(a)2 Stmt. ¶ 11.) This second report is an essay written by Dr. Seneff in 2010, four years prior to the filing of this lawsuit, which also does not mention Sullivan. (Def.'s L.R. 56(a)1 Stmt. ¶ 11; Pl.'s L.R. 56(a)2 Stmt. ¶ 11.) Since then, Sullivan has not disclosed any other expert witnesses. (Def.'s L.R. 56(a)1 Stmt. ¶ 12; Pl.'s L.R. 56(a)2 Stmt. ¶ 12.)

On March 28, 2014, Defendant moved for summary judgment, arguing that Sullivan "cannot establish the essential element of causation because he has no admissible expert testimony that Lipitor caused any of his alleged injuries." (ECF No. 24 at 2.) Sullivan opposed Defendants' motion for summary judgment on August 25, 2015, and September 2, 2015. (ECF Nos. 28-29.) Defendant filed a reply on September 8, 2015 (ECF No. 31), and Sullivan filed two more replies on September 16, 2015, and November 19, 2015. (ECF Nos. 33 and 34.)

## II.  **STANDARD**

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks and citation omitted). In reviewing the record, the court must "construe the facts in the light most favorable to the non-moving party," *Breyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted), and "resolve all ambiguities and draw all inferences in favor of the nonmoving party . . . ." *Aldrich v. Randolph Cent. Sch. Dist.*,

963 F.2d 520, 523 (2d Cir. 1992) (citation omitted). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (internal citations and quotation marks omitted).

Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure states that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). Moreover, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Local Rules of Civil Procedure for the District of Connecticut specify requirements for the parties' Local Rule 56(a) statements, which they must use to support and oppose a motion for summary judgment:

> Each statement of material fact . . . and each denial in an opponent's . . . Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial. . . . [F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with Rule 56(a)1 or in the Court imposing sanctions, including . . .when the opponent fails to comply, an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law.

CT R USDCT L.Civ.R. 56(a)(3).

### III.   DISCUSSION

The CPLA "provides the exclusive remedy against a seller of a defective product." *Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*, 291 Conn. 224, 230 (2009) (citation omitted); *see also* Conn. Gen.Stat. § 52–572m(b) (noting that the CPLA covers "all claims or actions brought for personal injury . . . caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of any product"). "A product is defective when it is unreasonably dangerous to the consumer or user." *Battistoni v. Weatherking Products, Inc.*, 41 Conn. App. 555, 562 (1996) (quotation marks and citation omitted). "In a products liability action, the plaintiff must plead and prove that the product was defective and that the defect was the proximate cause of the plaintiff's injuries." *Haesche v. Kissner*, 229 Conn. 213, 218 (1994) (internal quotation marks and citations omitted). In order to prove failure to warn under the CPLA, the Plaintiff must "prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, [he] would not have suffered the harm." Conn. Gen. Stat. § 52-572q(c).

"Under the ordinary consumer expectation test, a plaintiff may prove that the product is unreasonably dangerous without presenting expert testimony, but only when the everyday experience of the particular product's users permits the inference that the product did not meet minimum safety expectations." *D'Ascanio v. Toyota Indus. Corp.*, 309 Conn. 663, 674, 72 A.3d 1019, 1026 (2013) (internal quotation marks and citations omitted). "Medical evidence relating to causes of injury to the human body is not normally considered to dwell within the common knowledge of a layperson." *Gold v. Dalkon Shield Claimants Trust*, No. B-82-383 (EBB), 1998 WL 351456, at *3 (D. Conn. June 15, 1998) (citations omitted).

Here, expert testimony is necessary to determine the effect of a prescription drug, Lipitor, on the human body, and to determine whether it caused Sullivan's injuries, including, among

others, medical diagnoses such as "severe peripheral neuropathy"; "high CPK levels indicating muscle damage"; "thyroid issue with continual cold body sensations"; and "transglobal amnesia." *See Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (the "device implanted in Mrs. Fane was not one with which an ordinary person would come in contact. The issue of causation in such a complicated medical case, therefore, was one beyond the sphere of the ordinary juryman and required expert testimony."); *Brown v. Johnson & Johnson Pharm.*, No. 3:12-CV-01381 MPS, 2015 WL 235135, at *4 (D. Conn. Jan. 16, 2015) (holding that expert testimony was required to determine whether the prescription drug Risperdal caused plaintiff's injuries); *Gold*, 1998 WL 351456, at *3 ("without a proffer of expert medical testimony as to causation to link the defect to the injury, a reasonable jury could not find that the plaintiff has proved that the defect caused her specific injuries. She, therefore, fails to demonstrate the existence of a triable issue of fact . . . .") *aff'd,* 189 F.3d 460 (2d Cir. 1999).[4]

Even if Dr. Seneff's "expert reports" are admissible,[5] they fail to raise a genuine issue of material fact as to specific causation. Her reports fail to offer *any* evidence that Lipitor—or Pfizer's failures to warn—caused Sullivan's specific injuries. Dr. Seneff's reports summarize research describing the effects of statin drugs on the body, and they make no mention of Sullivan or Lipitor. "[E]ven if the Court could find that [Lipitor] was defective, without expert medical testimony causally linking [Lipitor] to [Sullivan's] injuries, a reasonable jury could not find that

---

[4] Because prescription drugs and their effects on the human body are complex issues, Sullivan cannot avoid the need for expert testimony by relying on the doctrine of *res ipsa loquitur*. *See Koger v. Synthes N. Am., Inc.*, No. 3:07-CV-01158 WWE, 2009 WL 5110780, at *3 (D. Conn. Dec. 17, 2009) ("plaintiff's proof of defect and causation involves complex issues, requiring expert testimony. Plaintiff cannot rely upon application of the 'malfunction doctrine,' which is an approach similar to that of *res ipsa loquitur* that has been adopted in products liability cases").

[5] Pfizer also argues that Dr. Seneff is not qualified as an expert by knowledge, skill, experience, training, or education, and therefore her testimony should be inadmissible under Federal Rule of Evidence 702. The Court need not address this argument.

it is more probable than not that [Lipitor] *caused* [Sullivan's] injuries in this specific case." *Brown,* 2015 WL 235135, at *4 (*citing Gold,* 1998 WL 351456, at *3); *Koger v. Synthes N. Am., Inc.*, No. 3:07-CV-01158 WWE, 2009 WL 5110780, at *2 (D. Conn. Dec. 17, 2009) ("at the summary judgment stage, plaintiff must produce evidence establishing that it is more probable than not that the screw broke due to its defective condition."). Because Sullivan's only disclosed expert, Dr. Seneff, does not provide any opinion causally linking Lipitor—or Pfizer's failures to warn—to Sullivan's alleged injuries, he is unable to establish a claim under the CPLA.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion [23] for Summary Judgment. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            March 4, 2016